# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| **ESTHER S. CHAPA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-10-CA-0945-XR** |
| | ) | |
| **FLORESVILLE INDEPENDENT** | ) | |
| **SCHOOL DISTRICT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

On this date, the Court considered Defendant's Motion for Summary Judgment and Motion for Partial Dismissal (docket no. 18), Plaintiff's Response (docket no. 20), and Defendant's Reply (docket no. 22).   For the reasons stated below, Defendant's Motion for Partial Dismissal is GRANTED, and Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part.

## Background

Plaintiff, Esther S. Chapa, began employment as a custodian at Defendant, Floresville Independent School District's high school on August 21, 2007.  On July 28, 2008, Plaintiff fell when stripping the floor of a classroom and injured her right knee and left chest area.  Plaintiff filed worker's compensation claims to cover her medical bills.  The doctor released Plaintiff back to work on light duty with restrictions of no stairs and no lifting over twenty pounds.  According to Plaintiff, the Custodial Supervisor told Plaintiff that she (the supervisor) "did not believe in light duty" and

that if Plaintiff "could not do the job, she needed to just go home." Plaintiff asserts that she interpreted this statement "as a threat to my job." Plaintiff alleges that after her injury, she was unable to take trash to the dumpsters daily because of the medical restrictions placed on her by her doctor, and that in response, her supervisor added five more rooms to her cleaning responsibilities. Plaintiff asserts that this required more walking and cleaning responsibilities. Plaintiff states that "[t]his attempted accommodation for stairs and physical labor which further aggravated my injuries and disabilities." Plaintiff further states that during this time period, her supervisor began to have a "negative attitude" towards her and that she would yell at her.

In early September 2008, Plaintiff's doctor instructed her to stop working for about a month. Plaintiff asserts that this was the result of "increased workload and schedule" that were "aggravating [her] injuries." In October 2008, Plaintiff returned to work on light duty, with restrictions of no stairs and no lifting over 20 pounds. Plaintiff asserts that after she returned to work, someone began "sabotaging" her supply closet by hiding her supplies. Plaintiff states that she believes a co-worker named Carlos was responsible for the sabotage. Plaintiff states that the "pattern began after I returned to work with my disabilities and restrictions."

Plaintiff states that the situation escalated, and that she was the subject of numerous pranks. Specifically, she states that someone placed cat feces in her cleaning area, and that she believed her co-worker Carlos was responsible. Plaintiff states that she reported the incident to her supervisor, but that her supervisor declined to discipline Carlos because she did not believe there was any proof that he had done it. Plaintiff also states that another co-worker left an inappropriate message in blood for her on a restroom wall. Plaintiff further alleges that her supervisor limited her supplies and that on one occasion someone emptied her bleach bottle to prevent her from performing her cleaning

duties.  Plaintiff alleges that her supervisor would not allow her to bring supplies from home, and that these actions were "attempts to make me quit and [] began after my injuries . . . ."

Plaintiff alleges that before her injury, she always received good verbal annual reviews, but that after the injury, her supervisor informed her that teachers were complaining of her work. Plaintiff alleges that she asked for details about the complaints, but that she was not provided any additional information.

On November 12, 2008, Plaintiff's co-worker Carlos filed a sexual harassment claim against Plaintiff for bumping and brushing against him in a way that made him uncomfortable and for wearing "suggestive clothing."  The Director of Personnel held a meeting with Plaintiff, Plaintiff's supervisor, and others, where Plaintiff was informed of the allegations.  Plaintiff states that she told the Director of Personnel and her supervisor that she believed the false accusation and other pranks being played on her, as well as Defendant's failure to abide by her doctor's restrictions, were ploys to get Plaintiff to quit because of her injuries and prior complaints about harassment.  Plaintiff was put on administrative suspension pending an investigation.

After the District's Director of Personnel conducted an investigation, he concluded that he could not substantiate that any sexual harassment was intended by Plaintiff.  Plaintiff was reassigned to the middle school campus in December of 2008 to avoid personal contact with Carlos, the complaining coworker.  When Plaintiff was transferred, Plaintiff contends the supervisor from the high school said to Plaintiff in front of her new supervisor: "Now don't cause problems here" and "Don't be wearing provocative clothes."

Plaintiff alleges that throughout 2009, Plaintiff's knee injury caused her pain and her doctors told her to follow the physical restrictions until they could schedule surgery.  Plaintiff remained

under light duty and limited lifting, but Plaintiff states her supervisor repeatedly reminded her that she did not believe in light duty.  On October 13, 2009, Plaintiff alleges that her supervisor called her into a teacher's classroom and demanded to know when Plaintiff was scheduled for surgery, but Plaintiff told her she did not know yet.  Plaintiff claims that her supervisor became loud and belligerent and yelled that she had a right to know and that she was going to dock Plaintiff's sick days, berating her in front of a teacher.  Plaintiff states she told them she was on light duty but they continued to give her more and harder work, which aggravated her knee injury.  Plaintiff contends that her doctors tried to intervene on several occasions.  When a doctor insisted she no longer use the heavy machines, Plaintiff alleges her supervisor made her do all her mopping by hand, which she alleges "severely injured [her] shoulders and arms."  Then her doctors insisted she stop the daily hand mopping because she was overusing and injuring her arms and shoulders.  Plaintiff states she was never given light duty.  Plaintiff further states: "I continued to do everything asked of me for fear of getting fired even though I could barely walk at the end of each shift . . . ."

In the middle of October, Plaintiff's co-worker Irene Castillo made a sexual harassment complaint against another custodian named Jesse Perez.  Plaintiff became involved in the sexual harassment investigation and corroborated Ms. Castillo's account, alleging that vulgar and inappropriate sexual gestures were repeatedly made by Mr. Perez.  After completing the investigation, the Director of Personnel's issued a letter stating that he believed inappropriate conduct had occurred and advised Mr. Perez to refrain from sexually offensive behavior or behavior that could be construed as sexual harassment.  Plaintiff notes in her Complaint that Mr. Perez was not transferred to a different location after being found to have committed sexual harassment.

On October 15, 2009, Plaintiff also voiced concerns about her workload to the Deputy

-4-

Superintendent Ken Barber.  The District's Director of Maintenance, Charles Bump, was alerted to coordinate the investigation of Plaintiff's concerns, which included alleged bullying and harassment because she was required to mop the hallways on a daily basis; alleged lack of availability of an auto scrubber for daily use; allegations that her supervisor required Plaintiff to use "personal" or "vacation" leave rather than allowing "absent days without pay," other custodians taking long breaks; and that the workload was unfairly divided.  On November 5, 2009, Mr. Bump submitted a letter with his formal conclusions to Plaintiff.  The letter stated that daily mopping is the standard for all areas of the building and that the auto scrubber was used on a scheduled basis.  Mr. Bump referred Plaintiff to the absence policy and employee handbook for the concern about taking leave.  He stated that no significant disparities were noted in the alleged abuse of break times, and that all areas seemed to be divided fairly equally.

Plaintiff states that, after she complained about Mr. Perez's behavior and her workload, her supervisor added the large main hallway to her responsibilities, and that she was made to mop the large hallway and another large room every day, while other custodians had to mop only once per week.  Plaintiff also states: "After my complaints [] I suffered further retaliation" because my supervisor "became notably ruder to me."

On November 12, 2009, Plaintiff filed her first Charge of Discrimination with the EEOC, alleging disability discrimination and retaliation in violation of the ADA.  On December 15, 2009, Plaintiff amended the Charge to include sexual discrimination and harassment and retaliation based on her previous EEOC charge and her sexual harassment complaint.  Plaintiff stated that she had complained about the sexual harassment by Mr. Perez and it had stopped but then it started up again. Defendant contends it did not learn of the sexual harassment starting again until Plaintiff filed this

complaint.

Plaintiff alleges that after she filed her EEOC charge, "the retaliation got even worse." She states that her supervisor intentionally humiliated her in front of the band director and other teachers by shouting  at her to "Get back to work, we don't pay you to talk."  According to Plaintiff, the supervisor also humiliated her in front of a teacher by demanding to know why she was cleaning someone else's area without first checking with her supervisor and said "Don't talk back to me" when Plaintiff tried to explain.

In January 2010, Plaintiff requested and was granted medical leave for scheduled knee surgery.  Plaintiff never returned from leave, but Defendant contends it kept a position available for her.  On January 4, 2011, Plaintiff submitted her resignation.  In her resignation, Plaintiff stated: "my medical condition has prevented me from going back to work.  I would hope that it would improve but it has not.  I do not wish to keep anyone waiting so effective today January 4, 2011, I Esther Chapa tender my resignation."

## Procedural Background

This action was commenced on November 22, 2010 in this Court pursuant to federal question jurisdiction. (Docket No. 1).  Plaintiff's Original Complaint claims she suffered: (1) discrimination and retaliation based on sex under Title VII of the Civil Rights Act of 1964; (2) discrimination and retaliation under the Americans with Disabilities Act; (3) discrimination and retaliation based on disability under Chapter 21 of the Texas Labor Code; and (4) retaliation under the Texas Worker's Compensation Act.  Defendant filed its Answer and Affirmative Defenses on December 21, 2010. (Docket No. 2).  Pursuant to the Court's Scheduling Order, on March 30, 2012 Defendant filed the instant Motion for Summary Judgment and Motion for Partial Dismissal.  (Docket No. 7).

## Standard of Review

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate "specific facts" in the record "showing that there is a genuine issue for trial." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006).

## Analysis

First, Defendant argues the Court should dismiss Plaintiff's worker's compensation retaliation claims under the Texas Labor Code because the Defendant is immune from such claims and, therefore, the Court lacks jurisdiction over the claims. Defendant next moves for summary judgment on Plaintiff's remaining claims arguing that there was no adverse employment action to support any discrimination allegations and that none of Plaintiff's allegations are "materially adverse" as required to support a claim of retaliation.

In Plaintiff's Response, she states that she has established sufficient facts to deny summary judgment. However, the Court notes that the facts laid out in her Response are the exact same ones from her Original Complaint, and the only summary judgment evidence she raises is her own affidavit.

## I.    OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Plaintiff objects generally to Defendant's summary judgment evidence, and specifically to the affidavits of Jesse Ramos, Sylvia Campa, and Charles Bump, arguing that their affidavits are inadmissible because they are "interested witnesses." These objections are overruled. Plaintiff argues that the District's affidavits were from interested witnesses, but does not allege that the evidence was not based on personal knowledge or was not clear or direct. "A party may not defeat a properly supported motion for summary judgment merely by raising generalized questions about the credibility of the movant's affiants." *Nazerzadeh v. Harris County*, No. H-08-0499, 2010 WL 3817149 *3 (Sept. 27, 2010) (citing *Robinson v. Cheney*, 876 F.2d 152, 162 (D.C. Cir.1989)). An affidavit that is clear, direct, and free from contradictions and inconsistencies, and based on personal knowledge, is competent summary judgment evidence. *Id.*; *see also Gibson v. Liberty Mutual Group*, 129 Fed. Appx. 94, 95-96 (5th Cir. 2005). Accordingly, Plaintiff has failed to raise a valid objection to Defendant's summary judgment evidence.

Defendant also raises a number of objections to Plaintiff's summary judgment evidence. First, Defendant argues that a number of Plaintiff's statements in her affidavit are based on improper legal conclusions, are improper conclusory statements, are not based on personal knowledge, and are hearsay. The Court will only consider those objections as necessary in analyzing the merits of Defendant's motion, and will note any evidentiary decisions in the analysis section of this opinion.

Defendant also asserts that the Court should not consider any of the alleged events that occurred more than 300 days prior to Plaintiff's filing of her EEOC charge, because the statute requires that all charges of discrimination be filed with the EEOC within 300 days of their occurrence. To the extent Defendant asks this Court not to consider evidence related to Defendant's assertion that she was not reasonably accommodated for her disability, Defendant's objection is

overruled.  Plaintiff alleges that she repeatedly requested accommodations for her disability, including within the 300 day period prior to her EEOC charge. Viewing the facts in the light most favorable to Plaintiff, Defendant has not demonstrated that prior to January 2009 Plaintiff should have reasonably known that her requests for accommodations were going to be denied. *See Dudley v. Dallas Indep. Sch. Dist.*, No. 3:99-CV-2634-BC, 2001 U.S. Dist. LEXIS 585, at *13-17 (N.D. Tex. Jan. 16, 2001).  Plaintiff testified in her deposition that she never got a denial or approval of her request for accommodation.  Moreover, in October 2009 Plaintiff cooperated in an investigation into Plaintiff's workload conducted by Defendant's Director of Maintenance, which viewed in the light most favorable to Plaintiff was arguably a continued attempt to engage in an interactive process with Defendant to accommodate her disability.  Only after she was informed by the Director of Maintenance that her workload would not be decreased, did Plaintiff file her EEOC charge.  In any event, even if the Court did decline to consider incidents that occurred prior to January 2009, it would not change the Court's denial of summary judgment on this claim because, as noted, Plaintiff made requests for accommodation within 300 days of filing her EEOC charge.

With regard to incidents outside the 300 day window that relate to Plaintiff's other claims, the Court need not decide the issue because as discussed below, the Court grants summary judgment on those claims in Defendant's favor.

## II.    DEFENDANT'S MOTION TO DISMISS

Defendant moves to dismiss Plaintiff's worker's compensation retaliation claim under the Texas Labor Code.  In Defendant's Motion for Partial Dismissal, Defendant argues that Plaintiff's worker's compensation claims should be dismissed for lack of subject matter jurisdiction because the Defendant, as a school district, is immune from retaliation claims brought under the Texas

Worker's Compensation Act. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 54 (Tex. 2011). In Plaintiff's Response, she concedes that the worker's compensation claims should be dismissed based on immunity. Accordingly, this Court dismisses Plaintiff's claims under Chapter 451 of the Texas Labor Code.

### III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A.      Plaintiff's Title VII Sex Discrimination Claim

First, the Court considers Defendant's motion for summary judgment on Plaintiff's sex discrimination claim.[1] In Plaintiff's Original Complaint, Plaintiff contends that men and women were treated differently in Defendant's handling of sexual harassment complaints because "the Defendant did not transfer the person found to have committed the harassment [Mr. Perez] though the Plaintiff had been transferred to protect her male accuser when she herself was falsely accused of sexual harassment in the past." Defendant argues that Plaintiff has failed to establish a genuine issue of fact concerning her sex discrimination claim.

To establish a *prima facie* case for sex discrimination, a plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside her protected class, or similarly situated employees outside the protected class were treated more favorably under nearly identical circumstances. *Earle v. Aramark Corp.*, 247 F. App'x 519, 523 (5th Cir. 2007) (citations omitted). Once a plaintiff has made a *prima facie* case, the employer must provide "some legitimate

---

[1] Although Defendant treats this as part of Plaintiff's sex retaliation claim, it is more properly characterized as a sex discrimination claim. In Plaintiff's Original Complaint, the relevant heading reads "Discrimination and Retaliation based on Sex," and disparate treatment based on sex can be sex discrimination. The Court therefore reviews Plaintiff's retaliation and discrimination claims separately.

nondiscriminatory reason" for the adverse action taken. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). If the employer provides a nondiscriminatory reason, the burden shifts to the plaintiff to show a genuine issue of material fact that either (1) the employer's proffered nondiscriminatory reason is a pretext for discrimination or (2) regardless of the nondiscriminatory reason, the discriminatory reason was a motivating factor in the employer's action. *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citation omitted).

Defendant does not dispute the first two elements of the *prima facie* test. The Court therefore only considers the third and fourth elements. With regard to the third element, adverse employment action, Plaintiff points to her transfer from the high school to the middle school after a sexual harassment complaint was filed against her, while a male employee, Mr. Perez was not transferred following a sexual harassment complaint made against him. Specifically, she alleges that a "similarly situated employee[] outside the protected class" was "treated more favorably under nearly identical circumstances[.]" Defendant responds that the transfer was not an adverse employment action because it did not reduce Plaintiff's pay and benefits.

An adverse employment action in the discrimination context consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). An employment transfer may qualify as an adverse employment action if it makes the job "objectively worse." *Id.* at 283 (quoting *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 770 (5th Cir. 2001)). However, "where the evidence produces no objective showing of a loss in compensation, duties, or benefits, but rather solely establishes that a plaintiff was transferred from a prestigious and desirable position to another position, that evidence is insufficient to establish an adverse employment action." *Id.*

For example, in *Cooper v. UPS*, 368 Fed. Appx. 469 (5th Cir. 2010), the Fifth Circuit upheld a district court's grant of summary judgment on a discrimination claim where an African-American plaintiff was transferred to a different employment location after he declined a supervisor's request, while a similarly situated white employee was not subjected to a transfer. The court reasoned that such a "purely lateral transfer" could not be considered an adverse employment action because the plaintiff retained "the same title and benefits," even though the transfer resulted in a longer commute "that may have been inconvenient" for the plaintiff. *Id.* at *474. The court concluded that the transfer could not be viewed as "objectively worse." *Id.* at *475.

In the instant case, Plaintiff does not allege that the transfer from being a custodian at the high school to being a custodian at the middle school was objectively worse. Moreover, there is no evidence that Plaintiff lost job status, responsibilities, or benefits. As such, the Court concludes that Plaintiff's transfer did not rise to the level of an adverse employment action.

Additionally, Plaintiff cannot satisfy the fourth element of a *prima facie* case of sex discrimination– that similarly situated employees outside the protected class were treated more favorably under nearly identical circumstances. Under Fifth Circuit precedent, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). "If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." *Id.* (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221-22 (5th Cir. 2001)).

First, the Court notes that Plaintiff testified at her deposition that she did not believe that she was discriminated against on the basis of sex.  In addition, the conduct that resulted in Plaintiff's transfer differed from the conduct of the male employee (Mr. Perez) she alleges was similarly situated.  Mr. Perez made inappropriate comments generally and to many co-workers, whereas the alleged inappropriate conduct by Plaintiff (getting too close to a co-worker) was directed to one particular individual.  Mr. Perez was reprimanded and told to be more aware of his comments, while Plaintiff was transferred to avoid contact with the complaining individual.  The evidence shows that, in both instances, the Defendant completed an investigation and issued findings before deciding how to address the complaints.  Given the different natures of the complaints and the different employees affected, the Plaintiff has not shown that Defendant treated Mr. Perez more favorably than Plaintiff under nearly identical circumstances.

In sum, Plaintiff has failed to establish that she was the subject of an adverse employment action or that  similarly situated employees outside the protected class were treated more favorably under nearly identical circumstances.  The failure to establish a *prima facie* case requires the Court to grant defendant's motion for summary judgment on this employment discrimination claim.  *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012) ("To survive summary judgment on a claim of employment discrimination based on circumstantial evidence, the plaintiff first must establish a prima facie case.").

### B.      Title VII Sex Retaliation Claim

Defendant next moves for summary judgment on Plaintiff's sex retaliation claim.  In Plaintiff's Original Complaint, she claims that Defendant retaliated against her "based on the Plaintiff's exercise of protected rights under Title VII of the Civil Rights Act of 1964."  Plaintiff

claims Defendant retaliated against her "by repeatedly disparaging and berating the Plaintiff in front of others because of the Plaintiff's complaints of sexual harassment and her filing of an EEOC complaint." *Id.*

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must establish that: (1) she participated in a Title VII protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). Once the plaintiff makes a *prima facie* showing, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Id.* at 557. If the employer meets this burden of production, then the burden shifts back to the plaintiff to show that the employer's proffered explanation is a pretext for retaliation. *Id.*

Only the second and third prongs of the *prima facie* test are in dispute in this case.[2] To satisfy the second prong of adverse employment action, the action must be one that a "reasonable employee would have found . . . materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. v. White*, 548 U.S. 53, 60 (2006). The purpose of this standard is to separate significant from trivial harms. *Id.* at 68. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place

---

[2]To satisfy the first prong of participating in a Title VII protected activity, a plaintiff must oppose any practice that is designated as an unlawful employment practice by Title VII or make a charge, testify, assist or participate in any manner in an investigation, proceeding, or hearing under Title VII. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000). Defendant concedes that Plaintiff engaged in a protected activity when she was involved in a sexual harassment complaint against her co-worker and when she filed her EEOC complaint.

at work and that all employees experience." *Id.*

In the instant case, the Court agrees with Defendant that the actions complained of by the Plaintiff do not rise to the level of an adverse employment action.  In Plaintiff's affidavit, Plaintiff alleges that, after she participated in her co-worker's sexual harassment complaints, her supervisor "became notably ruder to [her]."  She alleges that, after she filed her EEOC Charge, the "retaliation got even worse."  She states that her supervisor "intentionally humiliated [her] in front of the band director and other teachers . . . stating 'get back to work, we don't pay you to talk'" and "humiliated [her] in front of teacher Ms. Wong by demanding to know why [she] was cleaning someone else's area without first checking with [her supervisor]."  In Plaintiff's deposition, she stated that her supervisor "got very belligerent" and was "practically screaming" at her.  Plaintiff also stated that her supervisor "was hounding [her] more than was called for" by "constantly scrutinizing [her] area."

The alleged humiliating statements made by Plaintiff's supervisor are not materially adverse. Being chastised by one's superiors does not, as a matter of law, rise to the level of material adversity. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331-32 (5th Cir. 2009).  Being treated poorly by supervisors also does not rise to the level of material adversity.  *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484-85 (5th Cir. 2008).  The alleged hounding/scrutiny by her supervisor is also not materially adverse.  *See Muniz v. El Paso Marriott*, 773 F. Supp. 2d 674, 681-82 (W.D. Tex. 2011) (holding that "closely monitoring Plaintiff's work" would not dissuade a reasonable worker from making or supporting a charge of discrimination), *aff'd*, *Muniz v. Columbia Sussex Corp.*, 2012 WL 1674244 (5th Cir. May 14, 2012).

Additionally, Plaintiff cannot satisfy the third prong of proving a causal connection between the protected activity and the adverse action.  To establish causation, a plaintiff need not prove that

the protected activity was the "sole factor" motivating the employer's actions. *See Mauder v. Metropolitan Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006), *petition for cert. filed*, 75 U.S.L.W. 3035 (U.S. July 13, 2006) (No. 06-68) (citation omitted). "The plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated." *Id.* (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)). In other words, "the evidence must show that the employer's [adverse action] was based in part on knowledge of the employee's protected activity." *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

With regard to the alleged retaliation that followed Plaintiff's participation in the sexual harassment investigation, Plaintiff merely states in her affidavit that her supervisor increased her workload and became "notably ruder" to her. However, Plaintiff makes numerous allegations that her supervisors were rude to her and increased her workload throughout the time she was employed with Defendant, not just after she assisted in the sexual harassment investigation. Moreover, in Plaintiff's deposition, Plaintiff testified that she believed she was being harassed because of her injury. Thus, Plaintiff's conclusion that this particular incident was "retaliation" for engaging in protected conduct related to sex discrimination, is not sufficient to establish a *prima facie* case for retaliation.

With regard to the alleged retaliatory conduct following Plaintiff's EEOC charge, Plaintiff states in her affidavit that after she filed her complaint, "the retaliation got even worse" and her supervisor "intentionally" humiliated her in front of teachers. However, when asked about the incident during her deposition, she stated that she believed her supervisor humiliated her in retaliation for her injury. Later in the deposition, Plaintiff said that she thought that her supervisor's

attempt to humiliate her in front of teachers, happened because she had filed complaints that her supervisors were overworking her and not giving her light duty after she had gotten notices from the doctor. Thus, Plaintiff's own testimony indicates that she believed her supervisor's conduct was in retaliation for her disability, not in retaliation for engaging in protected activity related to gender discrimination. Accordingly, Plaintiff has failed to establish a causal connection between the protected activity related to sexual harassment and the alleged retaliatory incidents.

### C.    Disability Discrimination Claim

Next, Defendant moves for summary judgment on Plaintiff's disability discrimination claims. In Plaintiff's Original Complaint, she claims that Defendant discriminated against her on the basis of disability in violation of the ADA and the Texas Labor Code.[3]  Plaintiff also asserts that Defendant failed to "reasonably accommodate Plaintiff's disability" in violation of the ADA. The Court considers Plaintiff's failure to accommodate claim and discrimination claims in turn.[4]

### 1.    Failure to Accommodate

The Court first considers Defendant's Motion for Summary Judgment on Plaintiff's failure

_____

[3]Because the law governing claims under the two statutes is identical, the Court will consider these claims together. *See Muniz v. Columbia Sussex Corp.*, 2012 WL 1674244, at *1 n.1 (5th Cir. May 14, 2012); *Cortez v. Ratheon Co.*, 663 F.Supp.2d 514, 520-21 (N.S. Tex. 2009) (citing *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999)

[4]In its Motion for Summary Judgment, Defendant fails to expressly address the elements of Plaintiff's failure to accommodate claim, arguing instead that Plaintiff has not established a *prima facie* case for discrimination under the ADA because she was not subjected to an adverse employment action. However, "[a] failure-to-accommodate claim under the ADA is distinct from a claim of disparate treatment." *Windhauser v. Bd. of Supervisors*, 360 Fed. Appx. 562, 565 (5th Cir. 2010). In failure to accommodate cases, a Plaintiff need not prove an adverse employment action "because a failure to reasonably accommodate is tantamount to adverse employment action." *Hardin v. CHRISTUS Health Southeast Tex. St. Elizabeth*, No. 1:10-CV-596, 2012 U.S. Dist. LEXIS 31444, at *19 n.3 (E.D. Tex. Jan. 6, 2012) (citing *Bridges v. Dep't of Social Servs.*, 254 F.3d 71, 2001 WL 502797, at *1 (5th Cir. 2001)).

to accommodate claim under the ADA.  To establish a *prima facie* case of discrimination based on failure to accommodate a disability, Plaintiff must show: "(1) the employer is covered by the statute; (2) she is an individual with a disability; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation." *Mzyk v. North East Indep. Sch. Dist.*, 397 Fed. Appx. 13, 15 (5th Cir. 2010).  Defendant has not challenged the first two elements of the test.  Accordingly, the Court only addresses the remaining two elements.

### a) Whether Plaintiff was qualified for the custodian job

In order to be qualified, an individual must be able to perform the essential functions of the employment position, with or without reasonable accommodation.  42 U.S.C. § 12111(8).  To avoid summary judgment, Plaintiff must "show that (1) [s]he could perform the essential functions of the job in spite of [her] disability, or (2) that a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job."  *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999) (citing 42 U.S.C. § 12112(a)).  Courts may consider a number of factors in determining whether a particular function is essential, including but not limited to: (1) the employer's judgment about whether a function is essential, (2) written job descriptions, (3) the amount of time that the employee spends performing the function, (4) the consequences of allowing the employee not to perform the function, (5) past work experiences of persons holding the same position, and (6) the present work experience of those holding similar positions.  *See Ketcher v. Wal-Mart Stores, Inc.*, 122 F. Supp.2d 747, 752 (S.D. Tex. 2000).  Moreover, "physical criteria, such as the ability to operate machinery, must be necessary and substantially related to a person's ability to perform the essential functions of the job."  *Id.*

-18-

Defendant argues that Plaintiff could not perform the custodian position's essential functions as defined by the job description. Defendant points out that the job description required "the normal capabilities of lifting, standing and stooping" and operating cleaning equipment and lifting heavy equipment, and the listed "Physical Demands" included "heavy lifting and carrying (exceeds 50 lbs.)." Defendant argues that Plaintiff was unable to perform these essential functions because she was restricted to no stairs and no lifting over twenty pounds. Plaintiff offers no contradicting evidence of what the essential functions of her job were or whether she could perform those essential functions, stating only in her affidavit that "I continued to do everything asked of me for fear of getting fired even though I could barely walk at the end of each shift; so any allegation that I could not perform the essential functions or duties of my job are just false."[5]

The Court cannot discern from the summary judgment record whether Plaintiff could have performed the essential functions of her job with reasonable accommodations. On the one hand, Plaintiff's doctor released her to work with at least temporary restrictions "of no stairs and no lifting over 20 pounds," and as noted, Plaintiff's job description required "the normal capabilities of lifting, standing and stooping" and "heavy lifting and carrying (exceeds 50 lbs.)." In addition, Plaintiff alleges that her doctor "insisted Plaintiff no longer use the heavy auto-scrubbers and buffers," and then later "insisted that the Plaintiff stop daily hand mopping because she was overusing and injuring her arms and shoulders." Plaintiff's job description requires Plaintiff to operate cleaning equipment and mop floors. Finally, Plaintiff conceded her "inability to make 2 to 3 trips per day to the trash

---

[5]In its motion for summary judgment, Defendant objects to this statement on the grounds that it is an improper legal conclusion and not based on personal knowledge. To the extent Plaintiff's statement makes a legal conclusion as to whether she performed the "essential functions" of her job for purposes of the ADA, the Court does not consider that portion of her statement for that purpose. Defendant's objection that Plaintiff's statement is not based on personal knowledge is overruled.

dumpster due to her lifting restrictions." Once again, this is a task outlined in Plaintiff's job description, which requires custodians to "remove trash."

However, the Court notes that despite presenting evidence that Plaintiff may not have been able to perform certain functions outlined in her job description, Defendant has presented no evidence regarding the frequency with which those jobs are required or whether alternative tasks could have been assigned to Plaintiff that would have allowed her to perform her job without disruption to the other custodian's workloads.  Defendant's own summary judgment evidence demonstrates that Plaintiff was, at a minimum, performing the same work as other custodians with little to no accommodations.  For example, Plaintiff's supervisor, Sylvia Campa, stated in her affidavit that "[a]ll of the [work] areas are fairly divided" and that Plaintiff "was not given any more rooms to clean than are listed in her designated area."  Campa further states that "[a]ll custodians are required to mop on a daily basis."  In addition, Charles Bump, who was charged with investigating Plaintiff's complaint that she was being given excessive work compared to other custodians, stated in his affidavit that his investigation into Plaintiff's workload revealed that "all areas seem to be divided fairly equal."  Defendant does not appear to have complained about Plaintiff's work, and actually states that it kept her position open for her while she was on leave for knee surgery.  In light of these facts, even though Plaintiff may not have been able to lift heavy objects, she still seems to have been fulfilling her job duties well enough for the Defendant to keep her in the position. Accordingly, the Court concludes that there is a triable issue as to whether Plaintiff was qualified to perform her job during the relevant time period.  As such, the Court cannot grant summary judgment on this point.

-20-

### b) Whether Defendant provided Plaintiff with a reasonable accommodation

EEOC regulations promulgated to implement the ADA define "reasonable accommodation" as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). "In general, it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005) (citing 29 C.F.R. § 1630.9, App. (1995)). "The employee must explain that the adjustment in working conditions or duties she is seeking is for a medical condition-related reason, but the employee does not have to mention the ADA or use the phrase 'reasonable accommodation.' Plain English will suffice." *E.E.O.C. v. Chevron Phillips Chemical Co.*, 570 F.3d 606, 617 (5th Cir. 2009) (citing EEOC "Requesting Reasonable Accommodation" in Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the ADA (Oct. 17, 2002), available at http:// www. eeoc. gov/ policy/ docs/ accommodation. html).

"Once such a request has been made, the appropriate accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability." *Cutrera*, 429 F.3d at 112. The process requires "communication and good-faith exploration." *Chevron Phillips Chemical Co.*, 570 F.3d at 621 (citing *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 871 (6th Cir.2007)); *see also Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), *judgment vacated on other grounds*, 535 U.S. 391 (2002)). "[W]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Cutrera*, 429 F.3d at 112 (citing

-21-

*Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).  Moreover, "[a]n employer may not stymie the interactive process of identifying a reasonable accommodation for an employee's disability by preemptively terminating the employee before an accommodation can be considered or recommended." *Id*. at 113; *see also Jenkins v. Cleco Power LLC*, 487 F.3d 309, 316 (5th Cir. 2007) (collecting cases).

Plaintiff has provided the Court with sufficient evidence of a triable issue as to whether she requested a reasonable accommodation, and whether Defendant satisfied the requirements for the interactive process.  With regard to whether Plaintiff requested reasonable accommodations, in her affidavit, Plaintiff states that she informed her supervisor of her injuries, disabilities and work restrictions, but that the Custodial Supervisor told her that she did not believe in light duty.  She further states that she "was never actually accommodated as to labor restrictions even though all of my supervisors were provided with doctor restrictions and I repeatedly verbally requested accommodations."  Additionally, Plaintiff stated in her deposition that she never got a denial or approval from her request to be placed on light duty, which she states she submitted to Sylvia Campa and her immediate supervisor.  In contrast, Plaintiff's supervisor states in her affidavit that she was "aware Mrs. Chapa suffered a knee injury," but that "Mrs. Chapa never requested any specific work accommodations."  This evidence raises a disputed fact issue material to determining whether Plaintiff requested reasonable accommodations for her knee injury.

With regard to whether Defendant engaged in an interactive process to accommodate Plaintiff's injury, there is also a question of triable fact.  Defendant asserts that it did provide Plaintiff reasonable accommodations, arguing that "Plaintiff acknowledges numerous times that the District did attempt to accommodate her" and that "Sylvia Campa testified that Plaintiff was allowed

to take short breaks whenever her knee was aggravated." However, Plaintiff asserts that she requested specific accommodations of light duty, with no stairs or lifting over 20 pounds. Defendant's assertion that Plaintiff's supervisor allowed her to rest her knee, does not evidence a good faith effort to engage in an interactive process to determine whether Plaintiff's injury could be accommodated. Accordingly, there is a question of fact as to whether Defendant failed to provide a reasonable accommodation, in violation of the ADA. *Cutrera*, 429 F.3d at 112-13 (triable fact issue exists where the interactive process was begun, but followed by firing the employee).

In sum, there are triable issues of fact regarding whether Plaintiff was qualified to perform her job, whether Plaintiff requested reasonable accommodations, and whether Defendant engaged in an interactive process to identify appropriate accommodations for Plaintiff's disability. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's failure to accommodate claim is denied.

### 2.     Discrimination

The Court now considers Defendant's Motion for Summary Judgment on Plaintiff's disability discrimination claim. In order to establish a *prima facie* case for disability discrimination when a plaintiff can only offer circumstantial evidence, a plaintiff must show: (1) she is disabled; (2) she is qualified for the job; (3) she suffered an adverse employment action based on her disability; and (4) she was replaced by or treated less favorably than non-disabled employees. *EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009). Defendant does not dispute that Plaintiff is disabled. Defendant also does not address in its motion the fourth element of the *prima facie* test, that Plaintiff was treated less favorably than non-disabled employees. Accordingly, the Court only considers the second and third elements.

With regard to the third element, the Court has already determined that Plaintiff has established a *prima facie* case that she was qualified for her job.  The Court therefore turns to the question of whether Plaintiff suffered an adverse employment action.  In the discrimination context, as opposed to the retaliation context, an adverse employment action must be an "ultimate employment decision." *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007).  Ultimate employment decisions include hiring, granting leave, discharging, promoting, or compensating. *Id.* at 559.  It is somewhat unclear what Plaintiff alleges was the adverse employment action, but it appears it is arguing that it was her increased workload.    However, an increased workload does not qualify as an ultimate employment decision and cannot be an adverse employment action. *See Benningfield v. City of Houston*, 157 F.3d 369, 376-77 (5th Cir. 1998) (holding that being assigned an unusually heavy work load was an administrative matter and not an adverse employment action).  Accordingly, the Court grants summary judgment on Plaintiff's ADA discrimination claim.

### D.    Disability Retaliation Claim

Finally, the Court examines Plaintiff's disability retaliation claim based on having to mop daily and being assigned more rooms after complaining about Defendant's failure to accommodate her disability.  To make out a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) she engaged in an activity protected by the ADA; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected act and the adverse action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).  Once the plaintiff makes a *prima facie* showing, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Id.* at 557.  If the employer meets this burden of production, then the burden shifts back to the plaintiff to show that the employer's proffered explanation is a pretext for

retaliation. *See Dutton v. Univ. Healthcare Sys., L.L.C.*, 136 Fed. Appx. 596, 599-600 (5th Cir. 2005).

Here, Defendant only challenges the second element of the retaliation test, whether Plaintiff suffered an adverse employment action. Plaintiff argues that she suffered an adverse employment action by being given a disproportionately heavy workload in retaliation for her requests for accommodation and EEOC complaint.[6] For example, Plaintiff states that when she could not take the trash to the dumpsters, she was given five more rooms to clean. Plaintiff asserts in her affidavit that this was in "retaliation" for her "lifting restrictions." In her deposition, Plaintiff testified that after another request for accommodation, her supervisor required her to mop hallways by hand on a daily basis, while other custodians were allowed to use the scrubber, and were only required to mop on a weekly basis. This allegation was subsequently investigated by the Director of Maintenance, who concluded that Plaintiff was given the same workload as other custodians and that mopping was a required part of the job. In response, Plaintiff merely states in her affidavit that the results of his investigation were "false."

Defendant responds by providing substantial evidence that Plaintiff was performing the same

---

[6]Plaintiff's retaliation claim focuses on her allegedly disproportionate workload. However, to the extent, Plaintiff's claim also rests on allegations that her supervisors were rude to her, the Court finds that those allegations do not rise to the level of adverse employment action because they were isolated incidents or minor annoyances that would not dissuade a reasonable employee from making or supporting a discrimination charge. *See Browning v. Sw. Research Inst.*, 288 F. App'x 170, 179 (5th Cir. 2008) ("alleged verbal abuse . . . amounts at best to nothing more than the 'petty slights' or 'minor annoyances' that all employees face from time to time"); *King v. Louisiana*, 294 F. App'x 77, 85-86 (5th Cir. 2008) ("allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation"). Moreover, the bulk of Plaintiff allegations were conclusory statements that certain incidents were retaliatory. "Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy her summary judgment burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (citation omitted).

work as other custodians.  For example, Plaintiff's supervisor, Sylvia Campa, stated in her affidavit

that "[a]ll of the [work] areas are fairly divided" and that Plaintiff "was not given any more rooms

to clean than are listed in her designated area."  Campa further states that "[a]ll custodians are

required to mop on a daily basis."  In addition, Charles Bump, who was charged with investigating

Plaintiff's complaint that she was being given excessive work compared to other custodians, stated

in his affidavit that his investigation into Plaintiff's workload revealed that "all areas seem to be

divided fairly equal."

     Assuming, without deciding, that Plaintiff has made a *prima facie* showing of retaliation,

Defendant has articulated legitimate, non-discriminatory reasons for Plaintiff's workload.  There is

substantial evidence that mopping was required of all custodians and was outlined in the job

description, as well as in each Master Schedule.  In addition, the evidence indicates that any tasks

assigned to Plaintiff that differed from the other custodians, such as the addition of five rooms to her

duties, were actually attempts to accommodate Plaintiff's lifting restrictions.  Because Defendant has

offered legitimate, non-discriminatory rationales for the adverse employment action, the burden

shifts back to Plaintiff to demonstrate that the adverse employment actions would not have occurred

"but for" her requests for accommodations and EEOC claim. *See Sherrod*, 132 F.3d at 1123.

Plaintiff has not directed the Court to any evidence with which she might carry that burden.

Accordingly, the Court grants summary judgment on Plaintiff's disability retaliation claim in favor

of Defendant.

### Conclusion

     Defendant's Motion to Dismiss Plaintiff's worker's compensation retaliation claim under the

Texas Labor Code (docket no. 18) is GRANTED, and the claim is DISMISSED.  Defendant's

Motion for Summary Judgment (docket no. 18) is GRANTED in part and DENIED in part.  Plaintiff

has raised a triable issue of fact for her ADA failure to accommodate claim.  Summary judgment is

GRANTED in favor of Defendant on all remaining claims.

It is so ORDERED.

SIGNED this 26th day of July, 2012.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE